# EXHIBIT A

Matthew A. Luber, Esq. - NJ ID # 017302010
mal@njlegal.com
Jeffrey D. Ragone, Esq. – NJ ID # 276772018
jdr@njlegal.com
McOMBER McOMBER & LUBER, P.C.
50 Lake Center Drive Suite 400
Marlton, New Jersey 08053
(856) 985-9800 Phone
*Attorneys for Plaintiff, Gregg D'Antonio*

| | |
|---|---|
| GREGG D'ANTONIO,<br><br>Plaintiff,<br><br>v.<br><br>GOLDEN PEAR FUNDING; KAREM MEJIA; DOUG MAXWELL; GARY AMOS; OLIVER HARRIEHAUSEN; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified businesses entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>BURLINGTON COUNTY<br><br>DOCKET NO.:<br><br>Civil Action<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Gregg D'Antonio ("Plaintiff"), by way of Complaint against Defendants Golden Pear Funding ("Defendant Golden Pear" or "Corporate Defendant"), Karem Mejia ("Defendant Mejia"), Doug Maxwell ("Defendant Maxwell"), Gary Amos ("Defendant Amos"), and Oliver Harriehausen ("Defendant Harriehausen") (collectively "Individual Defendants"), (collectively "Defendants") alleges as follows:

## PARTIES

1. Plaintiff is an individual residing in Mount Laurel, New Jersey. At all times relevant hereto, Plaintiff was employed by Defendant Golden Pear as an Account Executive.

2. Defendant Golden Pear is a consumer litigation funding firm headquartered in New York City, New York, and authorized to do business in the State of New Jersey. At all times relevant hereto, Defendant Golden Pear is an "employer" as defined under the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq.* ("CEPA").

3. Defendant Mejia is an individual and, at all times relevant hereto, is employed by Defendant Golden Pear as the Director of Human Resources. Upon information and belief, Defendant Mejia is a New York resident. This claim is brought against Defendant Mejia in her individual capacity and as an agent of Defendant Golden Pear.

4. Defendant Maxwell is an individual and, at all times relevant hereto, is employed by Defendant Golden Pear as the Vice President of Growth. Upon information and belief, Defendant Maxwell is an Arizona resident. This claim is brought against Defendant Maxwell in his individual capacity and as an agent of Defendant Golden Pear.

5. Defendant Amos is an individual and, at all times relevant hereto, is employed by Defendant Golden Pear as the Chief Executive Officer. Upon information and belief, Defendant Amos is a Pennsylvania resident. This claim is brought against Defendant Amos in his individual capacity and as an agent of Defendant Golden Pear.

6. Defendant Harriehausen is an individual and, at all times relevant hereto, is employed by Defendant Golden Pear as the Vice President of Sales. Upon information and belief, Defendant Harriehausen is a Texas resident. This claim is brought against Defendant Harriehausen in his individual capacity and as an agent of Defendant Golden Pear.

7. Defendant ABC Corporations 1 through 5 are currently unidentified business entities who have acted in concert with Defendant and/or currently unidentified business entities responsible for the creation and/or implementation of anti-discrimination, harassment, and/or

retaliation policies of Defendant, and/or currently unidentified business entities who have liability for the damages suffered by Plaintiff under any theory advanced therein.

8. Defendants John Does 1 through 5 are currently unidentified individuals who acted in concert with Defendants and/or currently unidentified individuals responsible for the creation and/or implementation of anti-discrimination, harassment, and/or retaliation policies for Corporate Defendant and are currently unidentified individuals who may have liability for damages suffered by Plaintiff under any theory advanced herein.

**FACTS COMMON TO ALL CLAIMS**

9. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

10. Plaintiff commenced employment with Defendant Golden Pear on or about November 6, 2023, as an Account Executive.

11. Defendant Golden Pear is a finance company based in New York City. Defendant Golden Pear engages in the funding of personal injury legal matters, and the purchasing of medical receivables from physicians and medical centers.

12. At the time of Plaintiff's hiring, Defendant Golden Pair has corporate offices in Jersey City, New Jersey, in addition to New York City.

13. Throughout his employment with Defendant Golden Pear, Plaintiff worked exclusively from his home office in New Jersey.

14. As an account executive, Plaintiff was responsible for selling Corporate Defendant's services and product solutions.

15. Plaintiff's compensation plan included a nondiscretionary 1.5% commission on all billed charges that the account executive originated.

16. Plaintiff closed business deals with two major hospital systems, resulting in billed charges of more than $20,000,000. Plaintiff organized the sale of Defendant Golden Pear's Med Rec solution to both hospital systems, acquired signed approval from each hospital systems' CEOs and CFOs, respectively, and received the required documentation for the deals to process.

17. Under his compensation plan with Defendant Golden Pear, Plaintiff sought to receive the 1.5% of the billed charges he was owed in commission, or approximately $300,000.

18. However, Plaintiff quickly came to learn that Defendants were denying him his duly earned commissions, despite the fact that Plaintiff had earned Defendant Golden Pear over $20,000,000 in billed charges on the two deals.

19. Defendants purported that Plaintiff had failed to acquire "PIP exhaustion letters" for every case, and thus his commission would not be paid.

20. Plaintiff looked further into the matter and, as a result of speaking with billing expert Lou Signo, learned that funding companies almost never request PIP exhaustion letters because the information can be obtained through other documents in the patient files.

21. Plaintiff reported this information to Defendants and objected to their withholding of his duly earned commissions over the baseless excuses regarding the PIP exhaustion levels. In response, Defendants purported that—after he had poured countless hours of effort into securing both deals and over $20,000,000 in billed charges for the company—Plaintiff's work "***wasn't good enough***," as if this was a reason for Defendants to not pay Plaintiff his duly earned, nondiscretionary commissions. It had become blatantly obvious to Plaintiff that Defendants were concocting every possible excuse to avoid paying Plaintiff.

22. Defendants advised Plaintiff "***don't get your hopes up***" on receiving ***<u>any</u>*** commission as an employee of Defendants. It was clear to Plaintiff that Defendants were seeking

to defraud him of his duly earned commissions.

23. Accordingly, Plaintiff raised his concerns to Defendant Mejia, Defendant Golden Pear's Director of Human Resources. In his complaint, Plaintiff emphasized his role in executing the deals and complained of Defendants' sudden rug pull, stating:

> ***I feel as though this role was <u>misrepresented</u> to me as a commissioned sales role***. I sold the solution and due to reasons beyond my control, will not be paid commission for my work. I took this opportunity at GP on the promise of a heavily weighted commission upside; my base at GP is half of what I made in my previous 4 roles. The lack of commission has caused me to have major financial strain and hardship.

24. Here, Plaintiff clearly objected to and complained about Defendants defrauding Plaintiff of his duly earned commissions.

25. In response, Defendant Mejia asserted that Plaintiff "misunderstood" his compensation plan, and that he was not owed any commissions on the 20 million dollars he secured for Defendants. Additionally, Defendant Mejia told Plaintiff that there were countless processes involved in securing funding for his commissions, and that the acquisition of PIP exhaustion letters was just one of the required processes.

26. Plaintiff responded to Defendant Mejia with the following email:

**Subject: Re: Formal Complaint**

Karem,

Thank you for your response.

As I mentioned in my previous email, none of the processes regarding a compliance team, underwriting team, SOA Committees or Dr. Roy's guidelines were brought to my attention when I was offered the position at Golden Pear. Per my offer letter, I was offered the role of Account Executive where I was to be paid 1.5% of billed charges for originations of medical receivables. By definition, originations are the beginning of or bringing into existence. I brought into existence over $20M of billed charges through my relationships at CareWell and CarePoint; and that's just what we have in our G-drive/BOX. Collectively they both have over $100M in billed charges that they wanted us to fund.

It wasn't until after Maddie and I onboarded CareWell, did Jason then say that we needed PIP exhaustion letters for each case. It wasn't even listed on the onboarding slide deck under "Required files and Data Points". Then, it wasn't until I spoke with Lou Signo the billing expert, that she informed me that this isn't common practice. I spoke with other GP employees that are having similar issues on a smaller scale. It seems to us that GP doesn't want to fund anything but wants us to work for 1/5 of what we were promised to make while interviewing. I was lied to regarding my earning potential, and I was lied to regarding the complexity of the funding process. I did my job and sold Golden Pear's services, only to be defrauded out of receiving my earned commissions.

Best,

**Gregg D'Antonio**
District Sales Manager | GPF OPCO, LLC

27. Plaintiff continued to report, complain, and object to Defendants' lying, misleading, and fraudulent conduct because Plaintiff reasonably believed he was being defrauded of his earned commissions on billed charges that he personally originated and brought into existence.

28. Upon information and belief, Defendants Amos and Harriehausen are directly responsible for misrepresenting Plaintiff's position, commission, and earning potential with Defendant Golden Pear.

29. On Defendant Mejia's excuse regarding processes that needed to occur, Plaintiff responded that the requirement for PIP exhaustion letters was not mentioned in the onboarding process, nor was it a common practice as indicated by the billing expert Lou Signo. Plaintiff

pushed back on Defendants' assertions, clearly protesting their efforts to minimize his earning potential and defraud him out of receiving his earned commissions.

30. In response to his persistent complaints of being defrauded by Defendants, Defendant Maxwell told Plaintiff that his chances of him getting paid *any* commission from Defendants were the equivalent to finding a "***needle in a haystack***."

31. ***Defendant Maxwell also informed Plaintiff that he was getting pressured by Defendant Golden Pear's CEO, Defendant Amos, to put Plaintiff on a PIP, most obviously in direct retaliation for Plaintiff complaining that his position was misrepresented and that he was being defrauded out of his duly earned commissions.***

32. Defendant Amos purported that Plaintiff had no opportunities in HubSpot, Defendants' case management software.

33. Despite Defendants' assertions, Plaintiff clearly had over $35,000,000 in opportunities on HubSpot, while Plaintiff's coworker in the Western region had only $5,000,000 but was not being pressured to increase his opportunities.

34. In short, Defendants were clearly retaliating against Plaintiff for his complaints, protests, and objections to Defendants' practice of defrauding Plaintiff (and others in his role) of his duly earned commissions.

35. **<u>On October 9, 2024</u>**, Plaintiff again raised complaints of Defendants' clearly retaliatory threats of a PIP to Defendant Mejia, explaining that he had millions of dollars in opportunities available and stating:

> I'm fully aware that instructions like these come from the top and roll downhill. It feels a lot like a threat and retaliation for my complaints about being lied to and not being paid for closing business. ***I have closed two accounts whose CEOs signed contracts with us and sent us millions of dollars in batches to fund and I didn't get paid commissions for my work. It is illegal and***

***fraudulent to not pay commissions under these circumstances***.

36. **On October 11, 2024*, two (2) days following Plaintiff's complaint of the retaliation*** he was facing for his ongoing complaints of Defendants' misleading and fraudulent activity, Defendant Mejia placed Plaintiff on a 30-day PIP. Plaintiff immediately objected to Defendants' retaliatory performance plan, stating **"*I completely disagree with these frivolous accusations contained in this P.I.P. It is clearly retaliation for my complaints against Golden Pear not paying commissions for my two multimillion dollar sales*."**

37. Defendants ignored Plaintiff's serious complaints and objections to Defendants' misleading, fraudulent, and retaliatory conduct. Instead, Defendants retaliated against Plaintiff by placing him on the PIP, which included completely unrealistic requirements.

38. Rather than simply pay Plaintiff his duly earned commissions, Defendants erected insurmountable barriers to Plaintiff's success. ***Thus, on November 15, 2024, when Plaintiff was inevitably unable to meet their infeasible requirements, Defendants terminated Plaintiff's employment***.

39. It is therefore without question that Plaintiff was terminated in retaliation for complaining of and objecting to Defendants' act of defrauding Plaintiff of his earned commissions. Such retaliatory conduct is a complete violation of CEPA.

40. Defendants' termination of Plaintiff was in direct retaliation of Plaintiff's objections to Defendants' fraudulent practices which Plaintiff reasonably believed were unlawful. Plaintiff would not have been terminated if not for his objections to Defendants' unlawful policies.

41. As a result of his wrongful termination, Plaintiff has suffered from, and continues to experience, severe emotional and financial distress.

**COUNT ONE**

**<u>RETALIATION IN VIOLATION OF CEPA N.J.S.A. 34:19-1 to -14</u>**

42. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

43. CEPA's legislative purpose "is to protect and encourage employees to report illegal or unethical workplace activities and to discourage . . . employers from engaging in such conduct." <u>Lippman v. Ethicon, Inc.</u>, 222 N.J. 362, 378 (2015) (quoting <u>Abbamont v. Piscataway Twp. Bd. of Educ.</u>, 138 N.J. 405, 431 (1994)).

44. CEPA specifically provides:

> <u>An employer shall not take any retaliatory action against an employee because the employee does any of the following</u>:
>
> a. <u>Discloses, or threatens to disclose to a supervisor</u> or to a public body <u>an activity</u>, policy <u>or practice of the employer</u>, or another employer, with whom there is a business relationship, <u>that the employee reasonably believes</u>:
>
> (1) <u>is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any</u> shareholder, investor, client, patient, customer, <u>employee</u>, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care; or
>
> (2) <u>is fraudulent</u> or criminal, <u>including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any</u> shareholder, investor, client, patient, customer, <u>employee</u>, former employee, retiree or pensioner of the employer or any governmental entity;
>
> b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer, or another employer, with whom there is a business relationship, including any violation involving deception of, or misrepresentation to, any

       > shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into the quality of patient care; or
>
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;
>
> (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or
>
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. 34:19-3 (emphases added).

45. In the course of his employment with Defendant Golden Pear, Plaintiff reasonably believed that Defendants engaged in numerous unlawful practices, violating statutes and regulations promulgated pursuant to law, including but not limited to the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.2, and the New Jersey Wage Theft Act, N.J.S.A. 34:11-4.10. Moreover, Plaintiff reasonably believed Defendants' violations of law involved the deception of,

and misrepresentations to, employees of Defendant Golden Pear, namely Defendants' team of sales managers and representatives, including Plaintiff himself. N.J.S.A. 34:19-3(a)(1), (c)(1).

46. Defendants had knowledge of Plaintiff's objections and refusal to participate in Defendants' numerous acts of unlawful conduct.

47. As a direct result of Plaintiff's objections to the unlawful practices of Defendants, in addition to Plaintiff's threats to disclose same, Defendants took retaliatory action against Plaintiff by taking adverse employment action culminating in his termination.

48. Defendants are vicariously, strictly, and/or directly liable to Plaintiff for an unlawful retaliatory discharge in violation of CEPA.

49. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under CEPA, punitive damages, pre-and post-judgment interest, attorney's fees and costs of suit, and for such other relief that the Court deems equitable and just.

**COUNT TWO**

**NEW JERSEY WAGE PAYMENT LAW (N.J.S.A. 34:11-4.1 *et seq.*)**

50. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

51. Defendants contractually agreed to pay Plaintiff nondiscretionary commissions, bonuses, and other awards for meeting specified quantifiable goals and achievements.

52. Defendants failed to pay Plaintiff for all of the commissions and nondiscretionary bonuses contractually due to him.

53. After agreeing to pay these commissions and bonuses, Defendants never informed Plaintiff that he would no longer receive commissions or non-discretionary bonuses.

54. Defendants' conduct in failing to pay Plaintiff all owed wages violated New Jersey's Wage Payment Law and Wage Theft Act.

55. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, liquidated damages, pre-and post-judgment interest, attorney's fees and costs of suit, and for such other relief that the Court deems equitable and just.

**DEMAND FOR DISCOVERY OF INSURANCE COVERAGE**

Pursuant to *Rule* 4:10-2(b), demand is made that Defendants disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all the judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgement and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including, but not limited to, any and all declaration sheets. This demand shall include and cover not only primary insurance coverage, but also any excess, catastrophe, and umbrella policies.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Gregg D'Antonio*

By: /s/ Matthew A. Luber, Esq.
Matthew A. Luber, Esq.

Dated: March 27, 2025

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to *Rule* 4:25-4, MATTHEW A. LUBER, ESQUIRE is hereby designated as trial counsel for Plaintiff.

**CERTIFICATION**

Pursuant to *Rule* 4:5-1, it is hereby certified that, to the best of my knowledge, there are no other civil actions or arbitration proceedings involving this matter with respect to this matter and no other parties need to be joined at this time. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Gregg D'Antonio*

By: /s/ Matthew A. Luber, Esq.
Matthew A. Luber, Esq.

Dated: March 27, 2025

# Civil Case Information Statement

## Case Details: BURLINGTON | Civil Part Docket# L-000696-25

**Case Caption:** DANTONIO GREGG VS GOLDEN PEAR FUNDING
**Case Initiation Date:** 03/27/2025
**Attorney Name:** MATTHEW ALLEN LUBER
**Firm Name:** MCOMBER MCOMBER & LUBER, PC
**Address:** 54 SHREWSBURY AVE
RED BANK NJ 07701
**Phone:** 7328426500
**Name of Party:** PLAINTIFF : DAntonio, Gregg
**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA)
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO
**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: Gregg DAntonio? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
**CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION**

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO **Title 59?** NO **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

03/27/2025
Dated

/s/ MATTHEW ALLEN LUBER
Signed

